## WILLIAM MOODY *versus* DANIEL WEBSTER.

An insurance broker, who receives premiums and pays losses, has a lien on the policies and abandonments in his hands, for a general balance against the underwriter.

Where the underwriter became a bankrupt, and the insurance broker, having a balance due to him for losses paid, did not present his claim under the commission of bankruptcy, but retained in his hands the policies and abandonments, and after wards, as a remuneration for the losses, a sum of money was paid, under the treaty with Spain of February 1819, to a third person for the benefit of all parties interested, it was *held*, that the insurance broker had a lien on such sum.

ASSUMPSIT for money had and received. The case came before the Court upon a statement of facts.

Nathan Bond was formerly an underwriter in an insurance office kept by Joseph Taylor. Bond became bankrupt, and the plaintiff was appointed assignee on his estate, under the **425** late bankrupt law of the United States. Taylor kept a running account with Bond of all premiums received and losses paid by him for Bond, the balance of which, on settlement, was found to be in favor of the broker, amounting to more than the sum demanded in this suit. This balance was never paid, nor was it proved under the commission. For some of the losses paid by the broker, as above mentioned, compensation was claimed, for the benefit of whom it might concern, under the treaty with Spain of February 1819, and was allowed and paid to the defendant as agent in this behalf ; and the amount is now claimed from him by the executor of Taylor. The commissioners under the treaty made it a rule, not to award compensation to the keepers of insurance offices, but to the owners of the property spoliated, or their assignees, in fact or in law, stating that this general rule, made for convenience, was not to prejudice the right or claim of any other persons to the sums awarded. The policies and deeds of abandonment were retained by Taylor until his decease, and afterwards remained in the hands of his executor, and were produced and furnished by him in support of the claim before the commissioners under the treaty.

The question submitted to the Court was, whether the executor of Taylor had such a lien on the policies in his hands, for the balance of the account, as to be entitled to

Moody
v.
Wcbster.

*Ma-ch 22d.*

426

*Aprii 3d.*

apply the proceeds to pay such balance. If the Court should be of opinion that he was so entitled, the plaintiff was to become nonsuit ; otherwise the defendant was to be defaulted.

*W. Simmons* and *Bliss*, for the plaintiff. It will not be pretended that there was any express pledge in the present case, and we apprehend that there is no lien arising by implication of law from the situation of the broker and underwriter. The broker held the policies for the benefit of the assured, and not of the insurer, and when the losses were paid, the policies became *functus officio* and of no value. If Taylor paid the losses, he did it as attorney to Bond, so that the payments must be considered as made by Bond himself. The remuneration under the treaty was a free gift, and cannot be considered as salvage. There was no way of compelling the government of Spain, or that of the United States, to pay the money, and the mere *spes recuperandi* was not capable of being valued. Phillips on Ins. 465. Admitting that Taylor once had a lien, it was long since at an end, because the debt itself became extinct by Bond's discharge under the bankrupt law. Had the commissioners under the treaty followed their own rule, they would have made their award in favor of Bond as assignee of the assured, and if the money had been paid to him, Taylor's executor could not recover it out of his hands. The written abandonments cannot give a lien, for Bond would have been entitled, as assignee of the assured, without any formal abandonment.

*W. Prescott, contrà,* cited 1 Cooke's Bankr. Law, 454, 580 ; Montag. on Lien, 69 ; Paley on Principal and Ag. 95 ; *De Gaminde* v. *Pigou,* 4 Taunt. 247 ; *Baker* v. *Langhorn,* 4 Campb. 396 ; *Parker* v. *Beasley,* 2 Maule & Selw. 423 ; *Peele* v. *Northcote,* 7 Taunt. 480.

PUTNAM J. delivered the opinion of the Court. It seems to be considered as settled, that a broker has a general lien on policies in his hands. He is entitled to deduct the money due for premiums, out of what he receives on the policies which are put into his hands to collect from the underwriters. *Whitehead* v. *Vaughan,* 1 Cooke's Bankr. Law, 579, 580. And although the broker should part with the policy, if i should come into his hands again, the lien would revive. ibid

**457.** If, therefore, this case is to be decided as if Bond, the underwriter, made the claim upon Taylor, the insurance broker, for premiums, it would be clear that Taylor would have a right to deduct what Bond was indebted for losses paid by Taylor, and that he would be liable to Bond only for the balance. And this right of set-off results from the implication of the law touching this subject, and need not be proved by any express agreement.

It has been contended for the plaintiff, that the remuneration under the award of the commissioners under the treaty, is to be considered as independent of the loss, and in the nature of a grant, which belongs to the former owner of the vessel; and not as salvage, in which light the defendant contends it should be considered. But it seems to us that the view which the defendant has taken of the matter, is correct upon that point. It was a satisfaction for the illegal capture, and if it had come to the hands of the broker, it would have been properly an item of account between him and the underwriter.

It is true, that when Bond became a bankrupt, Taylor might have presented and had this claim allowed against his estate. Taylor, however, preferred holding the policies as security; and he might lawfully exercise his own judgment in that respect. He could not, indeed, get any dividend upon the estate; but if, in virtue of his having the policies, he could obtain enough to satisfy his claim, he might properly insist upon that advantage.

This case is to be decided upon general principles applicable to underwriters and brokers as the business is here usually conducted. For the payment by the commissioners has been made without prejudice to the rights of either party.

If this money had been paid to the broker pursuant to a decree of a court of admiralty, it should seem to be clear that it would be subject to his lien. But it makes no difference, in principle, whether it has been recovered in the regular course of judicial process, or in virtue of the stipulations of a treaty. The abandonment and the policy were retained by the broker, and were coupled with an interest; which, so

far as it concerned the underwriter, should be protected in the hands of the legal representatives of the broker.

There is some confusion in the cases upon this subject, which may be reconciled by considering the nature of the agency of the broker. Where he acts under a *del credere* commission, he may be permitted to set off losses against the claim of the underwriter for premiums, which he would not be allowed to do, if he were acting as a broker without such a commission ; because under such a commission he procures policies for his principals in his own name, although as agent, and he is considered, as between the underwriters and himself, as the owner of the policies. And this arises from his increased liability to the assured for the losses. He is in such cases, therefore, permitted to set off losses, in the same manner as he would be if he were the sole proprietor of the property and policies. He is also liable to the underwriter for the premiums in such cases. The underwriter and the assured, in short, treat with the broker having such a commission, as with a principal.[1] But where one effects policies as agent, in his own name, without such a commission and such liabilities, and a loss happens, it belongs exclusively to the principal, and the broker cannot set it off against the premiums claimed from him by the underwriter, unless he should have paid it pursuant to the authority given to him by the underwriter. From thenceforward it would become an item in their mutual accounts, as in the cases cited touching this point.

In the case at bar it does not appear that Taylor had a *del credere* commission ; but he paid the losses upon receiving the abandonments, taking and holding the policies as his vouchers and for his security, within the general scope of his authority. And under the circumstances which are agreed, we are all of opinion that the plaintiff should become nonsuit.[2]

---

[1] Hughes on Ins. 106 to 109; 2 Phil. Ins. 366.

[2] 2 Phil. Ins. 364.